1
2
3
4
5
6
7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA STUART, | **NO. 2:14-CV-0416-SMJ** |
| Plaintiff, | MOTION FOR SUMMARY JUDGMENT RESPONSE BRIEF RE REHAB ACT |
| v. | |
| TOM VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture, | Hearing Date: August 30, 2016; 10:30 AM |
| Defendant. | Oral argument requested |

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

On January 13, 2012, Rebecca Stuart's ex-husband, Frank Toupal, pointed a gun in her face and attempted to kill her. (SOF ¶7)[1] As a result of this incident, Ms. Stuart suffers from Post-Traumatic Stress Disorder ("PTSD"). (SOF ¶8 *citing* Klein

---

[1] SOF = Plaintiff's LR 56.1 Statement of Facts.

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 1

Decl. ¶6) Within days the USDA knew Mr. Toupal attempted to murder Ms. Stuart. (SOF ¶10-11) By March 2012 Ms. Stuart's supervisor, Gina Kerzman, knew that Ms. Stuart suffered anxiety and was assessed with PTSD. (SOF ¶11-12) Although on notice of what is undisputedly a disability, the USDA did not enter into the interactive process in March 2012 in order to see what effect Ms. Stuart's anxiety (or PTSD) was having on her ability to do her job. From July 2012 through February 2013, Ms. Stuart requested (five times) that her back to back travel be limited as such travel exacerbated her anxiety and PTSD. (SOF ¶18-20, 24, 30, 34) Ms. Stuart's expert, Dr. Ron Klein, declares that Ms. Stuart's request to limit her travel was a "modest" request for which Ms. Stuart could have "justifiably" requested "much more" given Ms. Stuart's condition. (Klein Decl. ¶6, 7, 10) Instead, on February 8, 2013, three days after Ms. Stuart (on February 5th) informed the USDA that yet another health care provider had diagnosed her with PTSD, the USDA terminated her employment. (SOF ¶37) The USDA's notes from the February 5th meeting prove the agency regarded Ms. Stuart as disabled due to her limited ability to do out of area travel. (SOF ¶33) The USDA's Rehabilitation Act violations do not end there.

The USDA's sole basis for termination was Ms. Stuart's "inability to get along with others." (SOF ¶40) Since interacting with others is a major life activity, Ms. Stuart's PSTD affected her ability to interact with others, and "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis

for termination," *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001), the USDA's termination of Ms. Stuart violates the Rehabilitation Act. (Klein Decl. ¶6, 7, 8, 10)

Lastly, material issues of fact exist as to whether the USDA discriminated and retaliated against Ms. Stuart after she (again) informed the USDA, on February 5, 2013, of her PTSD diagnosis. While the government argues that discussion regarding Stuart's termination began in July 2012 that discussion arose at the same time Ms. Stuart made her first PTSD related accommodation request (SOF ¶16-17) and the final decision to terminate Ms. Stuart's employment was not made until February 7, 2013. (SOF ¶35) Further, as late as January 2013 Ms. Rides at the Door - - - the same person who made the decision to terminate Stuart's employment on February 7, 2013 - - - had ordered Stuart to NCRS Boot Camp, a three-week training course for non-temporary USDA employees, that Ms. Stuart was scheduled to attend in April 2013. (SOF ¶25, 36; 7/30/15 Kuhlmann Decl. ¶9-10) Put differently: if the USDA really wanted to fire Ms. Stuart in 2012 then why was she ordered, in January 2013, to attend an April 2013 course reserved for permanent status employees? Such inconsistencies, coupled with (a) the closeness in time between Stuart's February 5, 2013, protected activity and February 8, 2013, termination, (b) the USDA's failure to follow its own regulations in terminating Ms. Stuart's employment (the USDA moved Stuart from a probationary to permanent status in October 2011 which, in

turn, implicated certain pre-termination notice and grievance requirements that the USDA undisputedly did not follow), (c) Ms. Rides at the Door's false statements made in disputing Ms. Stuart's Privacy Act claim, (d) Ms. Jackson's conflicting sworn testimony about when the decision to fire Ms. Stuart was made, (e) Ms. Rides at the Door's admission that Ms. Stuart was fired for "non-fire worthy" offenses, and (f) the fact that Peter Bautista, Elieen Jackson, Jeff Khulman, co-workers of Stuart, also had trouble getting along with people but were not fired, constitute strong circumstantial evidence of discrimination that requires denial of summary judgment. (SOF ¶5, 35, 41, 51, 67, 76-77)

## II.    ARGUMENT

### A.    SUMMARY JUDGMENT IS INAPPROPRIATE IN DISCRIMINATION CASES.

On summary judgment reasonable inferences must be made in favor of the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Association,* 809 F.2d 626, 631 (9th Cir. 1987). In the employment discrimination context, "a grant of summary judgment…is generally unsuitable [when] the plaintiff has established a prima facie case because of the 'elusive factual question' of intentional discrimination." *Yartzoff v. Thomas,* 809 F.2d 1371, 1377 (9th Cir. 1987). The Ninth Circuit "emphasize[s] the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the

witnesses." *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1112 (9th Cir. 2004).

**B.    THE USDA USES THE WRONG DISABILITY LEGAL STANDARD.**

Congress enacted the ADA Amendments Act (ADAAA) on September 25, 2008 and "[i]n enacting the ADAAA…made it easier for an individual seeking protection under the ADA to establish that he or she has a disability within the meaning of the statute."[2] Accordingly, "[b]eginning in January 2009, 'disability' was to be broadly construed and coverage will apply to the 'maximum extent' permitted by the ADA and the ADAAA." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009).  In enacting the ADAAA "Congress overturned several Supreme Court decisions that Congress believed had interpreted the definition of "disability" too narrowly, resulting in a denial of protection for many individuals with impairments…"[3]  Two of the Supreme Court decisions Congress expressly overturned as part of the ADAAA were *Toyota Motor Mfg v. Williams* and *Sutton v. United Air Lines*.[4] The regulations implementing the ADAAA state that "[t]he primary object of attention in cases brought under the ADA

---

[2] *See* EEOC ADAAA Fact Sheet *available at*

https://www.eeoc.gov/laws/regulations/adaaa_fact_sheet.cfm

[3] *Id.*

[4] *See* ADAAA *available at* https://www.eeoc.gov/laws/statutes/adaaa.cfm

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 5

should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4).

The Court should reject the USDA's summary judgment motion in its entirety because it (a) wholly ignores the ADAAA, (b) improperly relies on *Toyota* and *Sutton* (and related pre-ADAAA authorities) and (c) wrongly argues that there "is a demanding standard for qualifying as disabled" and cites and related authorities in support. (ECF No. 28, p. 6)  Tellingly, the USDA does not even cite a post-ADAAA case until page 15 of its summary judgment brief and the cases cited thereafter are legally distinguishable (*Chadam* relates to ADA Title II – not at issue here) or factually distinguishable as *Kelley* found that the plaintiff was not qualified to do her job whereas the USDA expressly admits that Stuart was qualified and *Weaving* involved a plaintiff who <u>only</u> had trouble getting along with others whereas the USDA fired Stuart for her inability to get along with others <u>and</u> failure to communicate <u>and</u> hostility <u>and</u> perceived disability – *see infra.*

## C.    ISSUES OF MATERIAL FACT EXIST REGARDING PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM.

The government's argument that Ms. Stuart is not disabled should be rejected outright because the USDA's Final Agency Decision (FAD), page 7, last paragraph stated "[a]fter a careful inspection of the record, we find that [Stuart] is able to

establish she is a disabled person." (SOF ¶9) It is well established that "[t]he doctrine of judicial estoppel prevents the Government from having it both ways" *Fort Hall Landowners All., Inc. v. Bureau of Indian Affairs,* 407 F. Supp. 2d 1220, 1224 (D. Idaho 2006), and should apply in this instance for the government cannot claim Ms. Stuart was disabled at the administrative level but change course at the federal court level. Nonetheless, in the unlikely event the Court rejects Plaintiff's estoppel argument, it is clear that Ms. Stuart has a disability.

A plaintiff bringing a disability discrimination claim must establish "(1) that she is disabled within the meaning of the ADA; (2) that she is a qualified individual with a disability; and (3) that she was discriminated against because of her disability." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). The "mixed motive", as opposed to the "but for" causation standard, applies to Rehabilitation Act discrimination claims involving, as is the case here, federal employees. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008)(conducting extensive analysis of ADA and Rehabilitation Act (and citing 9th Circuit law) before determining that the mixed motive standard applies to Rehabilitation Act discrimination claims). Such claims may be proved by circumstantial evidence. *See infra.* Plaintiff incorporates the circumstantial evidence analysis set forth below (regarding her retaliation claim) in her disability discrimination claim. *See infra.*

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 7

Defendant does not dispute that Ms. Stuart was qualified for her tribal liaison job nor that Ms. Stuart suffered an adverse employment action. Instead, Defendant argues that Ms. Stuart was not disabled. (ECF No. 28, p. 7)  Defendant's argument fails legally and factually and should be rejected for three reasons. First, the USDA regarded Ms. Stuart as disabled and a plaintiff may establish the "disability" prong of a disability discrimination claim by showing that her employer "regarded her as" disabled. *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.,* 927 F. Supp. 2d 1030, 1066 (D. Or. 2012). Establishing a "regarded as" claim requires the Plaintiff show the employer believed that the employee had a substantially limiting impairment when the impairment was not so limiting.  *Id. See e.g. Eshelman v. Agere Sys., Inc.,* 397 F. Supp. 2d 557, 570 (E.D. Pa. 2005), *aff'd,* 554 F.3d 426 (3d Cir. 2009). A plaintiff bringing a "regarded as" claim is not required to show whether the impairment substantially limits a major life activity. 42 U.S.C. § 12102(3)(A).

The USDA regarded Ms. Stuart as disabled. On February 5, 2013, Ms. Stuart (again) told the USDA that she had PTSD and (again) requested for an accommodation regarding her out of area travel. (SOF ¶33) The USDA's note to file regarding that meeting reads, in part:

> I said as Tribal Liaison it seemed to me that meeting with the tribes was part of her duties, so if she could figure out how to do that without traveling she should note that in her reasonable accommodation request.

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 8

I then tried to explain to her that from the agency point of view the agency has a job that needs to be done, she was hired for that job, and an integral part of that job is meeting with the tribes and partners (she is a Tribal Govt Liaison) and coordinating conservation assistance.

I … explained that that if meetings with partners were considered a key critical part of her job, and she couldn't do those duties, at a certain point the agency would need to look at the situation and seek a long term solution. I said the agency's responsibility is to get the work done, if it turned out that she was not going to be able to do key critical functions on a permanent basis the agency might need to look at a disability retirement or removal for inability to perform duties, I used the analogy of a person hired as a soil con to do field work who lost a leg and could no longer do field work. (SOF ¶33)

Additionally, evidence of the USDA regarding Ms. Stuart as disabled is shown by the manner in which her February 8, 2013 termination was handled. Fearful that Ms. Stuart might use violence post-termination, the USDA escorted her from the premises with two armed guards who remained on duty for the following month.  (SOF ¶56-57; 7/30/15 Kuhlmann Decl. ¶14-15) The USDA's stereotyping of Ms. Stuart as a "dangerous to others" PTSD deranged crazy is no different than the stereotype that accompanies many PTSD affected combat veterans - - - whose PTSD is also caused not by the acts of their former spouses but enemy combatants. Additionally, Gina Kerzman, one of Stuart's supervisors, observed "the following consequences of the trauma Rebecca suffered:"

- Inability to concentrate on work
- Short emotional fuse and constantly on edge emotionally
- Frequent emotional outbursts
- Frequent discussions regarding the uncertainly of her safety

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 9

• Genuine concern for co-workers should her husband visit the workplace upon release.
• Lack of patience
• Frustration with the helplessness of her situation
• Simmering anger at the precarious situation in which she finds herself
• Weariness and signs of lack of rest (SOF ¶13-14)

Nevertheless, the USDA argues that it "never regarded [Stuart] as having an ADA impairment" and that the "regarded as" claim should fail because Plaintiff did not plead it in her complaint. (ECF No. 28, p. 16) The USDA's first argument fails in light of the USDA's February 5, 2013, note to file and Ms. Kerzman's notes. *See supra.* The USDA's second argument fails because Ms. Stuart adequately pled a disability discrimination claim in her complaint and Fed. R. Civ. P. 8 requires nothing more in the employment discrimination context. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002).

<u>Second</u>, in addition to being "regarded as" disabled, Ms. Stuart was disabled. Ms. Stuart establishes the existence of a disability under the ADAAA by showing (a) an *impairment* that (b) *substantially limits* (c) a *major life activity.* 42 U.S.C. § 12102(1)(A). The impairment and major life activities elements are questions of law whereas whether the impairment substantially limits a major life activity is a question of fact. *Sanchez v. Vilsack,* 695 F.3d 1174, 1178 (10th Cir. 2012).

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 10

Regarding the *impairment* and *substantially limits*[5] prongs, 29 C.F.R. § 1630.2(j)(3)(iii), states "the following types of impairments will, at a minimum, substantially limit the major life activities indicated: … post-traumatic stress disorder…substantially limit[s] brain function."

Regarding the *major life activity* prong - - which per 29 C.F.R. § 1630.2(i)(2) "shall not be interpreted strictly to create a demanding standard for disability" - - the brain function substantially limited by Ms. Stuart's PTSD impacts the major life activities of "concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i).

Ms. Stuart's own USDA supervisor observed Ms. Stuart's "inability to concentrate on work" – a major life activity. (SOF ¶14) The USDA fired Ms. Stuart for her inability to get along with others coupled with her being "aggressive and uncompromising" with and "refus[ing] to speak" to her co-workers. (ECF No. 29-7) Taken together, an impairment (here: PTSD) substantially limits an individual's ability to interact with others when the individual is unfriendly with co-workers *and* has "consistently high levels of hostility" *or* shows "failure to communicate when

---

[5] The "substantially limits" prong is "broadly construed in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i).

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 11

necessary."[6] And PTSD, for which Ms. Stuart was undisputedly diagnosed, affected Ms. Stuart's ability to think and communicate as manifested by her "[s]hort emotional fuse", "constantly on edge", "[f]requent emotional outbursts," and being "frequently drawn…to intrusive thoughts" such as "frequent discussions regarding the uncertainly of her safety."[7] (SOF ¶13-14) Ms. Stuart's expert, Dr. Klein and Ms. Stuart's supervisor are in agreement that Ms. Stuart's disability affected, at least, the major life activity of concentrating. (Klein Decl. ¶ 5-7; SOF ¶14) Lastly, Ms. Stuart's PTSD substantially limited her with regard to the major life activity of working as a "critical part of her job" required out of area "meetings with partners" as that out of area (as opposed to local/commuting) travel exacerbated her anxiety/PTSD. (Klein Decl. ¶7, 10; SOF ¶33 *citing* Jackson 2/5/13 Note to File)

Third, the USDA cites seven cases for the proposition that work related travel is not a disability. (ECF No. 28, p. 10)  All of the cases the USDA cites are pre-

---

[6] *See* EEOC Enforcement Guidance on the ADA and Psychiatric Disabilities ¶9 *available at* https://www.eeoc.gov/policy/docs/psych.html (last visited July 1, 2016).

[7] *Id.* at ¶10 ("an individual would be substantially limited [in her ability to concentrate] if s/he was easily and frequently distracted, meaning that his/her attention was frequently drawn…to intrusive thoughts.").

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 12

ADAAA cases decided before 29 C.F.R. § 1630.2(i)(1)(i) was re-written to provide "[i]n determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability." For example, the *Faiola* case upon which the USDA heavily relies cites bases its holding on the *Toyota v. Williams* case that the ADAAA expressly overruled. (ECF No. 28, p. 11) The USDA's pre-ADAA authorities should be rejected. Ms. Stuart's out of area travel exacerbated her PTSD, her request to mitigate her PTSD by limiting that out of area travel was reasonable and possible. (SOF ¶18; Klein Decl. ¶7, 10)

**D.  ISSUES OF MATERIAL FACT EXIST REGARDING PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM.**

Courts analyze a *failure to accommodate claim* under a "modified burden-shifting analysis" as opposed to the *McDonnell Douglas* framework.[8] *Peebles v. Potter,* 354 F.3d 761, 766 (8th Cir. 2004). *See also U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 401-06 (2002).   Under the modified burden-shifting analysis, Ms. Stuart must show that she: (a) is disabled; (b) qualified for the job in question and capable of performing it with reasonable accommodation; (c) the employer had

---

[8]  The modified burden shifting scheme is used because "failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." *Peebles*, 354 F.3d at 766.

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 13

notice of her disability; and (d) the employer failed to reasonably accommodate her disability. *Steenmeyer v. Boeing Co.,* 92 F. Supp. 3d 1024, 1030 (W.D. Wn. 2015). Once an employee informs his employer of a disability then the employer must engage in the interactive process and "an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Id.*; *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated sub nom. U.S. Airways, Inc. v. Barnett,* 535 U.S. 391 (2002). Lastly, "[a]n employee begins the accommodation process by notifying her employer of her disability; 'at that point, an employer's liability is triggered for failure to provide accommodations.'" *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014). Since the USDA admits Ms. Stuart was qualified to perform the essential functions of her job (SOF ¶61), all Ms. Stuart has to do is establish points (a), (c), and (d) above. (ECF No. 28, p. 9; SOF ¶ 61)

*Regarding point (a)*, Ms. Stuart is disabled with PTSD. (Klein Decl. ¶6; SOF ¶9) *Regarding point (c)*, Ms. Stuart informing Ms. Kerzman (in March 2012 – SOF ¶11-12; 7/30/2015 Kuhlmann Decl. ¶8) that mental health counselor Laura Flynn diagnosed her with PTSD was, standing alone, sufficient to trigger the interactive process as was Kerzman's acknowledgement of Stuart's anxiety. (SOF ¶11) For if a plaintiff triggers the interactive process by telling his employer (on a job application) that he is "hard of hearing", *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080,

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 14

1089 (9th Cir. 2002), then so was Ms. Stuart's telling her supervisor she had PTSD. The USDA was aware that Ms. Stuart had PTSD or symptoms related to PTSD. (SOF ¶10-15, 17, 30, 62-64) Ms. Stuart requested an accommodation regarding her disability in July 2012 (via Swannack), in August 2012 (via Rides at the Door), in the fall of 2012 (via Kerzman), December 2012 (via Jackson), January 2013 (via Teel), and February 2013 (via Jackson). (SOF ¶16 – 20, 24, 30, 34)  And "[o]nce an employee requests an accommodation for a disability, *or the employer recognizes the need for an accommodation,* an employer has a mandatory obligation to engage in the interactive process." *Barnett,* 228 F.3d at 1112 (9th Cir.2000)(emphasis added). That interactive process requires "(1) direct communication between the employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic,* 302 F.3d at 1089; *Humphrey,* 239 F.3d at 1137.    "The interactive process, as its name implies, requires the employer to take some initiative." *Ludovico v. Kaiser Permanente*, 57 F. Supp. 3d 1176, 1201 (N.D. Cal. 2014). And, "as a matter of law [an employer has] an affirmative duty under the ADA to explore further methods of accommodation before terminating" an employee and conduct relating to that disability cannot be a separate basis for termination. *Humphrey,* 239 F.3d at 1137, 1139-40.

Here the USDA provides no evidence of "direct communication" with Stuart or that it "considered" her request. None exists. No accommodation was made nor attempted even though required by the law and the USDA's policies. (SOF ¶¶18-20, 24, 30, 33, 34; Klein Decl. ¶9-12) Instead, the USDA terminated Ms. Stuart for "inability to get along with others" even though the government itself recognizes an "inability to establish and maintain effective relationships" as a mental disorder symptomatic of PTSD. 38 C.F.R. §4.130. *Regarding point (d)*, Ms. Stuart's request to limit back-to-back travel was reasonable, the USDA admits it was possible to limit Ms. Stuart's out of area travel, but the USDA did not accommodate Ms. Stuart's request. (SOF ¶¶18-20, 24, 25, 30; Klein Decl. ¶6, 7, 10)  Summary judgment should be denied regarding Ms. Stuart's failure to accommodate claim.

E.    **MS. STUART'S RETALIATION CLAIM.**

To establish a prima facie case of retaliation under Rehabilitation Act, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. *Pardi v. Kaiser Found. Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004). A party can establish the "causation" element of a retaliation claim through direct or circumstantial evidence, such as the employer's knowledge that the employee participated in protected activity and the proximity in time between the protected action and retaliatory conduct. *Yartzoff*, 809 F.2d at 1376. *Stegall v. Citadel Broad.*

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 16

*Co.,* 350 F.3d 1061, 1066 (9th Cir. 2003) (circumstantial evidence dispositive in all employment discrimination cases). Such circumstantial evidence includes (a) closeness in time between the protected activity and the adverse employment action, *Yartzof,* 809 F.2d at 1376; (b) failure to follow workplace regulations, *Porter v. California Dep't of Corr.,* 383 F.3d 1018, 1026 (9th Cir. 2004); (c) inconsistencies/shifting reasons *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015); (d) unequal treatment of similarly situated co-workers. *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 609 (9th Cir. 1982); and (e) stray remarks, *Mangold v. California Pub. Utilities Comm'n,* 67 F.3d 1470, 1477 (9th Cir. 1995).

Regarding the *proximity in time*, the USDA's attempt to undercut the closeness between Stuart's February 5th protected activity and February 8th firing by claiming that it began taking steps to terminate Stuart's employment in July 2012 fails for a variety of reasons. Undisputedly, the USDA began its process to terminate Stuart's employment *after* Toupal tried to kill her *after* the USDA was put on notice of Stuart's PTSD/anxiety (March 2012) and at the time Stuart made her first request for an accommodation in July 2012. (SOF ¶11-12, 16-17) Accordingly, the temporal proximity between Stuart's protected activity of requesting an accommodation (in July 2012) and the beginning of the termination process gives rise to an inference of discrimination. Regarding *inconsistencies,* Ms. Jackson, in sworn affidavit testimony to the USDA's EEO investigator, said that the decision

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 17

to terminate Stuart's employment was made in November 2012; but, in sworn deposition testimony, (correctly) said the decision to terminate Stuart's employment was made on February 7, 2013. (SOF ¶35) And while the USDA claims that Stuart's termination was pre-ordained in July (or November) 2012, Ms. Rides at the Door (in January 2013) ordered Stuart to attend an extensive out of area NRCS Boot Camp - - - an event scheduled for April 2013 - - - a date months *after* the date the USDA claims Ms. Stuart's "expected appointment two-year trial period [was supposed to] end[] in February 2013." (*Compare* ECF 29, ¶16 *with* SOF ¶25, 36) Put differently: had the USDA really meant to fire Stuart in July (or November) 2012, i.e. before her "expected appointment two-year trial period ended in February 2013" it logically follows that it would not have ordered her *in January 2013* to attend NRCS Boot Camp which was set to begin in *April 2013.* (SOF ¶25, 36) Yet the USDA registered Ms. Stuart for NRCS Boot Camp and fired her the same day the USDA sent her registration confirming her attendance at NCRS Boot Camp for April 16, 2013 – May 2, 2013. (SOF ¶36) Further, Ms. Jackson testifies that she told Shellie Moore (on February 5, 2013) that Ms. Stuart had PTSD but Ms. Moore denies that Ms. Jackson did so, the implication that two of the individuals involved in Ms. Stuart's termination are trying to cover their tracks and, in doing so, cannot get their story straight as to whether, or not, Ms. Stuart's PTSD was taken into consideration before she was fired. (SOF ¶ 39) The USDA's stated reason for firing

Ms. Stuart was based on alleged poor interactions with co-workers that occurred in May and June 2012. (SOF ¶40) But *after* the May/June 2012 events listed in the 2013 termination letter occurred Ms. Stuart received a positive performance certificate, a bonus, and a fully successful performance review. (SOF ¶40-42) All of this begs the question: if the mid-2012 events justifying Ms. Stuart's 2013 termination were so egregious then why wasn't she disciplined or fired in-mid 2012? Answer: the mid-2012 events are non-events that the USDA used as after-the-fact pretextual justifications to hide discriminatory animus. Indeed, Ms. Rides at the Door admits that the mid-2012 events cited in Ms. Stuart's termination letter were not "fire worthy events." (SOF ¶51) Other *inconsistencies* include Ms. Rides at the Door contesting Ms. Stuart's Privacy Act claim by falsely declaring, under penalty of perjury, that she did not explain "how or why" Ms. Stuart got fired when the opposite is demonstrably true. (*Compare* ECF No. 31-7, ¶5 *with* SOF ¶75 *citing* Cottrell Decl. ¶4 & Ex. A; SOF ¶76)  The government has prosecuted and convicted people who sue it in civil actions for lying during the course of litigation and would be within its rights if it held Ms. Rides at the Door to that same standard. *See U.S. v. McKenna*, 327 F.3d 830 (9th Cir. 2003). Importantly, Ms. Rides at the Door's untruthfulness with regard to the Privacy Act (and Ms. Jackson's conflicting under oath testimony about when the USDA decided to fire Stuart) places the USDA's credibility of its alleged non-discriminatory reasons for firing Stuart at issue.  For

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 19

"in many cases where the evidence is sufficient for a rational trier of fact to conclude that the employer is lying…summary judgment will be inappropriate on that basis alone because a jury could reasonably view the employer's lie as evidence of its guilt." *See Coghlan v. Am. Seafoods Co. LLC.,* 413 F.3d 1090, 1097 (9th Cir. 2005). Applying *Coghlan,* a rational jury could conclude that if Ms. Rides at the Door lied about not explaining why Ms. Stuart got fired as part of the USDA's opposition to Ms. Stuart's Privacy Act Claim then Ms. Rides at the Door also lied about the USDA's real reason for terminating Ms. Stuart.

Regarding *failure to follow its own regulations*, the USDA, in converting Ms. Stuart to permanent status in October 2011 (SOF ¶2-3) implicated 5 CFR §315.804, the regulation expressly cited in Ms. Stuart's SF-50 termination form. (SOF ¶3-5, 37-38; Appendix 1 to Privacy Act Brief) That regulation, 5 CFR §315.804, allows the USDA to fire an employee "because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications" but is "subject to §315.803" which, in turn, cites subpart D of 5 CFR § 752 which, in turn, requires the agency give the employee 30 days advance written notice of the termination and "a reasonable time to furnish medical documentation" that "may contribute to a conduct, performance, or leave problem." (See Appendix 1 to Privacy Act Brief) Undisputedly, the USDA did not give Ms. Stuart 30 days notice to contest her termination or to "furnish medical documentation" that "may contribute to a

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 20

conduct, performance, or leave problem." (SOF ¶38) Regarding *unequal treatment* of similarly situated personnel, Peter Bautista, Elieen Jackson, and Jeff Kuhlmann have had difficulties getting along with others but were not fired or otherwise disciplined. (SOF ¶41, 67, 7/30/15 Kuhlmann Decl. ¶13, 15)   Regarding *stray remarks*, Ms. Kerzman did not dispute telling Ms. Stuart to "be careful because the USDA might use her PTSD against her." (SOF ¶21-22).  Lastly, any argument by the government that Ms. Stuart was always difficult to work with and fired for that "legitimate non-discriminatory" reason should be rejected.  Notwithstanding the fact that the USDA never disciplined Ms. Stuart over the May and June 2012 events (SOF ¶40) that the USDA listed in its February 2013 termination letter, Ms. Stuart's former supervisor from 1998 - 2009, Rich Stoffle, PhD - - an individual the government's lawyers interviewed in this case - - declares:

> During the ten plus years I supervised Rebecca I have never had a supervisor, co-worker, customer, or anyone complain, imply, or otherwise stated [sic] that Rebecca had difficulty getting along with others. Much of Rebecca's work from 2002 onward involved working with Native American tribes. Not once did I hear any tribal member voice any concern whatsoever about Rebecca's performance or inability to work well with others. (SOF ¶6 *citing* Stoffle Decl. ¶4-5)

Unfortunately, Ms. Kerzman and Ms. Jackson's warnings that the USDA would use Ms. Stuart's PTSD against her turned out to be true. (SOF ¶22, 34) This Court should reject the USDA's pretextual justifications for that discriminatory and retaliatory act, deny summary judgment, and allow this case to go to trial.

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 21

### III.  CONCLUSION

Defendant's motion should be denied.

DATED this July 18, 2016.

*s/ Matt Crotty*
Matthew Z. Crotty, WSBA 39284
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave. Ste. 409
Spokane, WA  99201
Telephone:  509-850-7011

### CERTIFICATE OF SERVICE

I certify that on July 18, 2016 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties, if any, shall be served in accordance with the Federal Rules of Civil Procedure.

Dated this July 18, 2016.

*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 409
Spokane, WA 99201
Telephone: 509.850.7011

MOTION FOR SUMMARY
JUDGMENT RESPONSE BRIEF - 22