FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 23, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

REBECCA STUART,

    Plaintiff,

  v.

TOM VILSACK, in his official capacity as the Secretary of the United States Department of Agriculture,

    Defendant.

No. 2:14-CV-416-SMJ

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

   Before the Court, with oral argument, is Defendant Tom Vilsack's Motion for Summary Judgment and Dismissal of Plaintiff's Disability Discrimination Claim, ECF No. 28, and Motion for Summary Judgment and Dismissal of Privacy Act and Back Pay Act Claims, ECF No. 30. The Court has reviewed the pleadings and the file in this matter and is fully informed. As detailed below, the Court begins its analysis by providing relevant background information. It follows by addressing the sufficiency of Plaintiff's operative complaint and dismisses improperly pleaded matters. Next, the Court examines Plaintiff's disability discrimination claim under the Rehabilitation Act. The Court concludes that issues of material fact remain regarding Plaintiff's asserted disability because of her alleged inability to interact

ORDER - 1

with others. Similarly, Plaintiff's failure to accommodate and retaliation claims also survive. Lastly, the Court considers and rejects Plaintiff's Privacy Act and Back Pay Act causes of action.

Accordingly, the Court grants, in part, and denies, in part, Defendant's Motion for Summary Judgment and Dismissal of Plaintiff's Disability Discrimination Claim, ECF No. 28, and grants Defendant's Motion for Summary Judgment and Dismissal of Privacy Act and Back Pay Act Claims, ECF No. 30.

## I.   **Factual Background**

The United States Department of Agriculture's Natural Resources Conservation Services (NRCS) hired Plaintiff Rebecca Stuart as a Tribal Liaison on or about February 13, 2011. ECF No. 29-2 at 9. She was hired under provisions outlined in 5 C.F.R., Schedule A, Section 213.3102(u), "which allows agencies to non-competitively appoint applicants with severe physical disabilities under excepted appointment procedures." *Id.* In applying for this position, Stuart claimed lupus as her disability. ECF No. 29 at ¶ 3. In October 2011, Stuart received a "fully successful" year-end performance review for the period between February 13, 2011, and September 30, 2011. ECF No. 35 at 40. In late October 2012, Stuart received another "fully successful" annual performance evaluation. ECF No. 43-2 at PLF PG378.

A few months later, on January 13, 2012, Stuart's then husband threatened to kill her at her home. ECF No. 43-2 at PLF PG339; ECF No. 53 at 10. On or around January 17, 2012, Stuart informed several work colleagues about the incident with her husband, including: Ms. Rides at the Door, the State Conservationist; Gina Kerzman, her immediate supervisor; and Eileen Jackson, a local human resources (HR) employee. ECF No. 53 at 14. About two months later, in March 2012, Stuart's friend, a mental health professional, informally diagnosed her with Post-Traumatic Stress Disorder (PTSD). *See, e.g.*, ECF No. 43-1 at PLF PG314. Thereafter, on several occasions, Stuart discussed with Kerzman the stress that the life-threatening incident with her now ex-husband inflicted on her. ECF No. 53 at 15–16. Stuart voiced concerns for her safety. *Id.* Stuart also expressed concerns related to being away from home and how this caused her anxiety. *Id.* Kerzman observed some of the consequences the January 2012 event had on Stuart, including but not limited to, her inability to concentrate at work and frequent emotional outbursts. ECF No. 53 at 16–17.[1]

In July 2012, Jackson emailed a colleague at NRCS's HR department with national responsibilities, Shelli Moore, seeking advice about what to do about Stuart. ECF No. 29-4 at 13. Jackson wrote:

---

[1] The parties contest whether Stuart informed Kerzman of her unofficial March 2012 diagnosis. ECF No. 43-1 at PLF PG314 and PG315.

ORDER - 3

> Question: supervisor is having difficulties with [Stuart's] conduct and attitude at this point, we don't know yet whether we will successfully be able to resolve these issues, it's early days. But, if we work with the employee and are not happy with attitude, conduct etc. come February, are we ok to choose not to convert? Any advice on documentation, specific procedures I should follow etc. if it should come to that?

*Id.* In response, Moore said the trial period lasted two years not one and the agency could choose to not convert Stuart's employment. *Id.*

In August 2012, Stuart and Ms. Rides at the Door discussed limiting Stuart's travel. ECF No. 53 at 20. Later that fall, Stuart talked to Kerzman about how her extended work-related travel negatively affected her anxiety. *Id.*

Months later, in January 2013, Jackson and Moore again discussed Stuart's employment and whether they were undertaking a "termination" or simply deciding not to convert Stuart's employment status. ECF No. 43-1 at PLF PG197. Jackson makes clear that she and others were aware of the stresses and issues affecting Stuart at the time. *Id.* ("This is an extremely fragile and difficult employee, she's had a lot of personal stresses this past year. . ."). However, Jackson asserts that the decision was made in November 2012 to allow Stuart's position to expire rather than terminate her. *Id.*

That same month, on January 13, 2013, Stuart disclosed to Ms. Rides at the Door that she was concerned she might have PTSD. ECF No. 53 at 23–24. On February 5, 2013, Stuart informed Jackson in NRCS's local HR department that she had been diagnosed with PTSD. ECF No. 61 at 2; ECF No. 24 at ¶ 37.

ORDER - 4

Stuart then received a letter dated February 8, 2013, informing her she would no longer be employed at the NRCS. ECF No. 43-1 at PLF PG302. Later that same month, Kelli Green, a NRCS archaeologist working in Ephrata, Washington, emailed a few people outside of the NRCS to tell them Stuart no longer worked there. ECF No. 62 at 3; *see also* ECF No. 31-3. Green does not remember how she learned that Stuart was no longer employed at the NRCS. ECF No. 31-3 at ¶ 7.

## II.    <u>Relevant Procedural History</u>

Stuart filed an administrative Equal Employment Opportunity complaint with the U.S. Department of Agriculture's Office of Adjudication on April 8, 2013. ECF No. 43-1 at PLF PG313. In December 2014, that office issued its Final Agency Decision finding that Stuart had not been discriminated against. *Id*. at PLF PG320.

She appealed that decision by filing her complaint in this Court on December 31, 2014. ECF No. 1. Defendant answered on March 3, 2015. ECF No. 10. On December 11, 2015, Stuart moved to file an amended complaint. ECF No. 21. The Court granted the motion and Stuart filed her First Amended Complaint (FAC) on February 16, 2016. ECF Nos. 23 and 24. Defendant answered on February 29, 2016. ECF No. 25.

Approximately four months later, Defendant moved for summary judgment in two separate motions. ECF Nos. 28 and 30. The first motion seeks summary judgment and dismissal of Stuart's disability discrimination claim. ECF No. 28. The

second motion seeks summary judgment and dismissal of the Privacy Act and Back Pay Act claims. ECF No. 30. Oral arguments on these motions was heard on August 30, 2016. ECF No. 68.

## III.  <u>Discussion</u>

### A. Stuart improperly raises claims not pleaded in her FAC.

#### i. In employment discrimination cases, courts in the Ninth Circuit apply *Twombly* and *Iqbal*, in addition to *Swierkiewicz*, when evaluating a complaint's sufficiency.

The Parties contest whether some claims and arguments are properly before the Court. *See, e.g.*, ECF No. 58 at 9. In her response brief to Defendant's summary judgment motion on the Rehabilitation Act claim, Stuart articulates a "regarded as" claim about how the NRCS allegedly regarded Stuart as disabled. ECF No. 42 at 8–10. She also asserts claims about her inability "to interact with others" or "concentrate." ECF No. 10–12. Defendant claims that these arguments were not pleaded in the FAC and insists that this Court must dismiss these claims and allegations. ECF No. 58 at 6 n. 2, 9–11; *see, e.g.*, *Strasser v. BAC Home Loans*, 2014 WL 6686717, *10 (D. Or. Nov. 24, 2014) (declining to hear a claim raised at the summary judgment stage because it was not raised in the complaint).

For her part, Stuart cites *Swierkiewicz v. Sorema N.A.*, in support of her conclusory statement that she "adequately pled a disability discrimination claim in

ORDER - 6

her complaint and that Fed. R. Civ. P. 8 requires nothing more in the employment discrimination context." 534 U.S. 506, 513 (2002); ECF No. 42 at 10.

Importantly, neither party addresses how *Bell Atlantic Corp., et al v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), should inform the Court's determination of the complaint's sufficiency here. Together, these cases establish a heightened pleading standard: plaintiffs must state plausible, rather than merely conceivable, claims. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. Aug. 3, 2015).

Courts in the Ninth Circuit, like courts throughout the country, have wrestled with how to apply *Twombly* and *Iqbal* in different contexts, including employment discrimination cases. *See, e.g.*, *Sablan v. A.B. Won Pat Int'l Airport Auth.*, No. 10-00013, 2010 WL 5148202, at *3–4 (D. Guam Dec. 9, 2010). At least one court has concluded that *Twombly* and *Iqbal* overruled *Swierkiewicz*. *Id.* at 3 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)). District courts in the Ninth Circuit have not gone so far. When evaluating complaints in employment discrimination cases for their sufficiency at the motion to dismiss stage, "district courts in the Ninth Circuit are proceeding on the premise that although it may not be *necessary* that the complaint have facts constituting all the elements of a *prima facie* in order to survive the motion to dismiss, those elements are nonetheless *relevant* to the court's analysis of the sufficiency of the complaint." *Id.* at 4 (citing

several district court opinions addressing the issue). Indeed, the court in *Sablan*, after considering how other courts interpret *Twombly*, *Iqbal*, and *Swierkiewicz*, concluded that courts "*must* look at a complaint in light of the relevant 'evidentiary standard'" to decide whether it contains sufficient factual matter to be plausible on its face in employment discrimination cases. *Id.*

In *Sheppard v. David Evans & Assoc.*, the Ninth Circuit followed the approach outlined in *Sablan*. 694 F.3d 1045, 1048–50 (9th Cir. 2012).[2] There, the court considered the elements necessary to establish a prima facie case of discrimination in determining a complaint's sufficiency. Accordingly, in determining the sufficiency of a complaint alleging employment discrimination, courts in the Ninth Circuit consider the elements of the prima facie case that a plaintiff must eventually prove.

---

[2] At least one other circuit has taken a similar approach. In addressing how *Swierkiewicz* should be interpreted in light of *Twombly* and *Iqbal*, the Second Circuit stated: "[T]he *Swierkiewicz* Court's ruling that a Title VII complaint need only 'give the defendant fair *notice* of what the plaintiff's claim is and the grounds upon which it rests,' does not furnish a clear answer to the questions whether *Iqbal's* 'plausibility' requirement applies to employment discrimination cases and, if so, how." *Dawson v. New York City Transit Authority*, 624 Fed. App'x 763, 766 (2d Cir. Sept. 16, 2015) (internal citations omitted). The court went on to confirm that *Iqbal's* requirements apply to Title VII complaints of employment discrimination but clarified that "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and had at least minimal support for the proposition that the employer was motivated by discriminatory intent. . . They need not, however, give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Dawson*, 624 Fed. App'x at 767 (citations omitted). *Dawson*, therefore, provides district courts further guidance when evaluating a complaint's adequacy.

ORDER - 8

### ii. Properly pleading a disability discrimination claim.

To state a prima facie disability discrimination claim, a plaintiff must show that (1) she is disabled within the meaning of the Americans with Disabilities Act (ADA), (2) she is qualified for her position, and (3) that she was discriminated against because of her disability. *Smith v. Clark Cnty. Sch. Dist.,* 727 F.3d 950, 955 (9th Cir. 2013) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1). The 2008 ADA amendments (ADAAA) clarify that the definition of disability should be broadly construed. *Id.* § 12102(4); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

The Parties contest whether, in Stuart's response resisting summary judgment, she impermissibly alleges new bases for establishing her disability because they were not pleaded in her FAC. Stuart alleges the NRCS "regarded [her] as" disabled, ECF No. 42 at 8–10, that her anxiety and PTSD substantially limited the major life activities of "concentrating, thinking, communicating, interacting with others, and working," *Id.* at 10–12, and that work-related travel exacerbated her PTSD, *Id.* at 13. Defendant argues this Court must dismiss the former two allegations since they are not properly raised. ECF No. 58 at 6 fn. 2, 9–11. As to the

latter claim involving travel, Defendant asserts that work-related travel is not a disability. ECF No. 28 at 10–12.

### iii.  Stuart insufficiently pleads a "regarded as" disability.

An employee is "regarded as" disabled if an employer (1) "mistakenly believes that a person has a physical [or mental] impairment that substantially limits one or more major life activities" or (2) "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Hall v. Fluor Hanford, Inc.*, No. 08-5029, 2010 U.S. Dist. LEXIS 1661, *14 (E.D. Wash. Jan. 11, 2010).

Here, a review of the FAC reveals that Stuart claims anxiety and PTSD as the conditions that render her disabled. ECF No. 24 ¶¶ 55, 57. Nowhere does she assert a "regarded as" claim. Stuart must provide sufficient factual allegations in her FAC to support a "regarded as" claim. Stuart's complaint asserts that her employer knew about her anxiety and PTSD. *See, e.g.,* ECF No. 24 at ¶¶ 18, 19, 28. Therefore, she necessarily relies on the second avenue for establishing a "regarded as" theory. Yet, the factual allegations made in the FAC do not seek to establish this claim. The facts, as alleged in the FAC, describe a workplace where the employer knew Stuart was disabled but failed to grant her repeated requests for workplace accommodations. *See, e.g.*, *Id.* at ¶¶ 35. While Stuart had the option to claim her disability in one of three ways, or assert claims in the alternative, the FAC only

asserts one: that she is disabled because of her anxiety and PTSD. *See, e.g.*, *Id.* at ¶¶ 55. As such, the factual allegations in Stuart's FAC do not put Defendant on notice that she would be pursuing a "regarded as" claim of disability. Thus, the "regarded as" claim is not properly pleaded and is dismissed.

### iv. Stuart sufficiently pleads major life activities.

In her FAC Stuart alleges that her anxiety and PTSD limited her from traveling for work and in her ability to get along with her colleagues. *See, e.g.*, ECF No. 24. at ¶¶ 26, 49, 86, 93, 99. She also requested feedback about her work to help lessen her anxiety. *See, e.g.*, *Id.* ¶ 23. Stuart makes no allegations about how her alleged disabilities impact her ability to concentrate, think, communicate, or engage in other activities. As such, to the extent her responsive filings on summary judgment assert other impacted major life activities, those are not properly before the Court.

### v. Summary judgment is not an appropriate vehicle for correcting deficient pleadings.

The Ninth Circuit has made clear that "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.2006); *see also Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations

to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").

Therefore, and based on the discussion above, the Court will only consider those claims sufficiently pleaded in the FAC and thus properly before it.

### vi. The Court's ruling on Stuart's insufficiently pleaded claims does not prejudice Stuart.

Stuart could have amended her complaint a second time and, given that courts routinely allow parties to amend their pleadings, she likely would have been able to do so. Fed. R. Civ. P. 15(a)(2). Under the Scheduling Order in this case the parties had until May 13, 2016 to amend their pleadings. ECF No. 14. About a month before this deadline, the parties filed a stipulated motion to extend the discovery deadline. ECF No. 26. The Court granted this motion and set a new discovery cutoff date of June 30, 2016. ECF No. 27. In their stipulated motion, the parties stated that the new discovery deadline would not impact the dispositive motion schedule: "The parties submit that the proposed adjustment to the Court's scheduling order does not and should not affect . . . the remainder of the dispositive motions and trial related deadlines set forth in the Court's Scheduling Order." ECF No. 26 at 3. Presumably the parties also considered the deadline to submit any potential amended pleadings to this Court and determined that they would not need to amend their pleadings. Stuart thus effectively waived her ability to amend her FAC with any new information uncovered through discovery.

ORDER - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## B. Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### C. Stuart's disability discrimination claim under the Rehabilitation Act survives.[3]

The standard for establishing a prima facie disability discrimination claim set out in section III(A)(ii), *supra*, applies here as well.[4] A plaintiff must show that (1) she is disabled within the meaning of the Americans with Disabilities Act (ADA), (2) she is qualified for her position, and (3) that she was discriminated against because of her disability. *Smith*, 727 F.3d at 955. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Moreover, to prove disability an individual must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show that the impairment substantially limits one or more of those activities. *See, e.g.*, *Mamola v. Group Mfg. Servs.*, No. 08-1687, 2010 U.S. Dist. LEXIS 35433, *24–25 (D. Ariz. April 9, 2010) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011).

---

[3] The Court is aware of the Parties' various requests to disregard some of the opposing party's factual submissions and arguments. The Court declines to strike any submissions or arguments.
[4] "The Ninth Circuit has indicated that courts may consult case law interpreting the ADA in interpreting the Rehabilitation Act because there is no significant difference in the analysis of rights and obligations created by the two Acts." *Linder v. Potter*, No. 05-62, 2009 U.S. Dist. LEXIS 72941, *7 (E.D. Wash. Aug. 18, 2009).

It is undisputed, for purposes of summary judgment, that Stuart was qualified to perform the duties of a tribal liaison. ECF No. 53-1 at ¶ 61. Second, the parties do not engage on the question of whether Stuart suffered adverse employment action. ECF No. 28, 42, and 58. Instead, the parties dispute whether Stuart was disabled within the meaning of the ADA. *Id.* Stuart must show that her alleged disabilities—anxiety and PTSD—are recognized and they impair a major life activity. Otherwise the inquiry ends because she cannot prove she is disabled within the meaning of the ADA.

### i. Stuart's PTSD and related anxiety are recognized impairments.

Post-Traumatic Stress Disorder is a recognized impairment. 29 C.F.R. § 1630.2(j)(3)(iii); *Linder v. Potter*, No. 05-0062, 2009 U.S. Dist. LEXIS 72941, *9 (E.D. Wash. Aug. 18, 2009). Insofar as the anxiety Stuart alleges is related to her PTSD, that is also a recognized impairment. 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.")

### ii. Travel is not a major life activity and cannot support Stuart's disability discrimination claim.

The ADA provides a partial list of major life activities, including but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Defendant cites to several cases holding that travel is not a major life activity, even following the ADAAA. ECF No. 58 at 3. In opposition, Stuart argues the ADAAA instructs that "[i]n determining other examples of major life activities, the term major shall not be interpreted strictly to create a demanding standard for disability." ECF No. 42 at 13. Yet she cites to no authority holding that travel or related activity is a major life activity. The Court has found no authority so holding. To the contrary, courts have held that work-related travel is not a major life activity. *See, e.g.*, *Stamm v. N.Y.C. Transit Authority*, No. 04-2163, 2011 U.S. Dist. LEXIS 36195, *44–47 (E.D.N.Y March 30, 2011) (citing *Coons v. Sec'y of Treasury*, 383 F.3d 879 (9th Cir. 2004)) (holding that neither travel nor commuting is a major life activity).

Thus, Stuart cannot rely on travel as the major life activity impacted by her impairments to establish her disability.

### iii. Interacting with others is a major life activity and whether it is applicable in this case is a question of material fact.

Although not listed in 42 U.S.C. § 12102(2)(A), the Ninth Circuit has recognized that interacting with others is a major life activity. *Weaving*, 763 F.3d at 1112. However, the court in *Weaving* made clear that persons claiming that they cannot interact with others must meet a high threshold; simply not being able to get along with others is insufficient. *Id.* at 1113. A plaintiff asserting this claim "must

show that his relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary." *Id.* (quotations and citation omitted).

Here, an issue of material fact remains as to whether Stuart's inability to interact with others is better characterized as an inability to get along with others or if it is severe enough to be cognizable as a major life activity. On the one hand, Stuart's FAC alleges multiple instances of her ability to communicate with others, even if she did not obtain her desired result. For example, on multiple occasions she made requests to not travel as much for work, ECF No. 24 at ¶ 28, requested feedback about her work, *Id.* at ¶ 23, inquired whether her job was in jeopardy, *Id.* at ¶ 30, among other interactions at work. These demonstrate that Stuart could communicate when necessary. In contrast, Stuart's employer was sufficiently afraid of how she would react to news of her termination that they discussed and took security precautions before delivering the news. *See, e.g.*, ECF No. 43 at ¶ 58.

As such, a material question of fact remains regarding Stuart's disability claim.

### D. Stuart's failure to accommodate claim survives.

Under the ADA, a prima facie failure to accommodate claim requires a plaintiff to show that: (1) she is disabled within the meaning of the ADA; (2) she is qualified and able to perform the essential functions of the job with or without

reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Given that a question of material fact exists regarding Stuart's alleged ADA qualifying disability, this claim also remains.

### E. Stuart's retaliation claim survives.

The ADA's retaliation provision provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation claim under the ADA requires a plaintiff to show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003).

A plaintiff who lacks direct evidence of retaliation may use the *McDonnell Douglas* burden shifting analysis. *See, e.g., Morgan v. Napolitano*, 988 F.Supp.2d 1162, 1176 (E.D. Cal. Dec. 19, 2013). Accordingly, once a plaintiff has made a prima facie showing of retaliation, the burden shifts to the employer to present legitimate reasons for the adverse action. *Brooks*, 229 F.3d at 928. If the employer

meets that burden, the burden shifts back to the employee to demonstrate a genuine issue of material fact regarding whether the employer's reasons were pretext. *Id.*

Here, making all reasonable inferences in Plaintiff's favor, Stuart engaged in protected activity when she informed Jackson of her PTSD diagnosis on February 5, 2013. ECF No. 24 at ¶ 64. Stuart also argues that her July 2012 request for feedback was a protected accommodation request. ECF No. 42 at 17. The Court need not decide whether the latter was a protected activity, however, since Stuart engaged in at least one protected act. Her termination three days later was an adverse action. ECF No. 24 at ¶ 38. Thus, the first and second elements of the prima facie case for retaliation are met.

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the retaliatory employment decision." *Yarzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (citation omitted). "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865–66 (9th Cir. 2003).

The temporal proximity between when Stuart informed Jackson of her PTSD diagnosis and her termination is enough to state a prima facie case. However,

Defendant has articulated legitimate, nondiscriminatory reasons for terminating Stuart. Namely, that Stuart's employment was in the conversion window and that Defendant chose not to convert. ECF No. 43-1 at PLF PG189, ¶ 25. Stuart argues that Jackson contradicts herself regarding when the decision to terminate her was actually made. ECF No. 43 at ¶ 35. However, the record reflects that there is no contradiction. The decision to not convert Stuart's employment was made in November 2012, ECF No. 43-1 at PLF PG188, ¶ 17, while the termination occurred February 2013, *Id.* at PLF PG188–89.[5]

The burden thus shifts to Stuart to demonstrate that a genuine issue of material fact remains as to whether the asserted reason is pretext. The record reflects that the reason underlying Defendant's decision not to convert Stuart's employment rested on her inability to work well with others. ECF No. 43-1 at PLF PG188, ¶ 25. Given the discussion in section III(C)(iii), *supra*, regarding the outstanding question of material fact about Stuart's inability to get along with others, this claim remains as well.

---

[5] The Court recognizes that there is another highly relevant and contested issue. Defendant points to the fact that Stuart—then using her now ex-husband's last name Toupal—signed a letter in which she recognized that it would be two years before her position could be converted, not one, to show that he merely decided not to convert. ECF No. 29-3. Stuart, on the other hand, points to Standard Form, 50 ECF No. 43-2 at PLF PG352, to demonstrate that the conversion period was actually one year, and not two. Given that the Court does not weigh the evidence at this stage and the retaliation claim is otherwise preserved, the Court need not reach this issue at this time.

**F. Stuart's Privacy Act claim fails.**

To succeed on a Privacy Act claim, a party must show "1) the agency disclosed information contained within a system of records; 2) the disclosure was improper; 3) the disclosure was intentional or willful, and 4) the [party] was adversely affected by the disclosure." *Tungjunyatham v. Johanns*, 500 Fed. App'x 686, 689 (9th Cir. 2012) (citing *Swenson v. U.S. Postal Service*, 890 F.2d 1075, 1077 (9th Cir.1989)).

Courts have held that "Congress did not intend the Act to apply to all information in the hands of government-officials; rather, it sought to avoid indiscriminate circulation of sensitive information about an individual's private affairs . . . . Its legislative history makes it clear that the Act was intended to protect only personal information, and not information which reveals nothing about a person's private affairs." *Windsor v. A Fed. Exec. Agency*, 614 F.Supp. 1255, 1261 (M.D. Tenn. Oct. 25, 1983). An agency's disclosure of employment status has also been held to not violate the Privacy Act. *See, e.g.*, *Tennessean Newspaper, Inc. v. Levi*, 403 F.Supp. 1318, 1321 (M.D. Tenn. Nov. 11, 1975).

Stuart's Privacy Act claim is premised on allegedly improper disclosures relating to her termination, or stated differently, her employment status. ECF No. 24 ¶¶ 68-70. Stuart does not allege that the NRCS or any of its agents or employees disclosed any other type of information. Rather, Stuart alleges that because

information related to her employment status is kept in Defendant's records, the disclosure of this information violates the Privacy Act. ECF No. 45.

This argument is not persuasive. The disclosure of a person's employment status reveals nothing about their private affairs and is therefore not covered by the Privacy Act. Thus, the Court need not reach any of the other arguments raised on this claim and this cause of action does not survive summary judgment.

### G. Stuart's Back Pay Act claim fails.

Stuart's final cause of action asserts a violation of the Back Pay Act. ECF No. 24 at ¶ 76. In resisting summary judgment on this claim, she asserts there is "no known Ninth Circuit case" addressing whether the Back Pay Act affords a "stand-alone" claim. ECF No. 45 at 19–20. This is incorrect. Although *Jayne v. Johnson* is an unpublished opinion[6] it makes clear that a "Plaintiff[] cannot invoke district court jurisdiction of [her] claim[] under the Back Pay Act, 5 U.S.C. § 5596 *et seq.*, because the Back Pay Act is not an independent basis for jurisdiction." 65 Fed. App'x 176, 178 (9th Cir. 2003) (citing *Bowen v. Mass.*, 487 U.S. 879, 907 n. 42 (1988)). Further, the Rehabilitation Act "provides that back pay is an appropriate element of damages." *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1069

---

[6] Fed. R. App. P. 36-3(c)(i) permits citations to unpublished dispositions and orders before January 1, 2007 when, among other things, the case cited is "relevant under the doctrine of law of the case." Here, since *Jayne* squarely addresses the legal doctrine governing the Back Pay Act's inability to confer independent jurisdiction, the citation is appropriate.

ORDER - 22

(9th Cir. 2005) ("[T]he Rehabilitation Act, like the ADA, incorporates Title VII's back pay remedy. . . ").

Stuart's Back Pay Act claim is not properly before the Court and is redundant of her Rehabilitation Act claim. The Court therefore grants Defendant summary judgment on this claim.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion for Summary Judgment and Dismissal of Plaintiff's Disability Discrimination Claim, **ECF No. 28**, is **GRANTED**, in part, and **DENIED**, in part.

2.    Defendant's Motion for Summary Judgment and Dismissal of Privacy Act and Back Pay Act Claims, **ECF No. 30**, is **GRANTED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 23rd day of November 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 23